IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF
ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| ANGELA L. WILSON, | ) | Defendant. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 2:11-CV-407-TFM |
| MICHAEL J. ASTRUE, | ) | (WO) |
| Commissioner Social Security | ) | |
| Administration, | ) | |

## MEMORANDUM OPINION AND ORDER

Angela L. Wilson ("Plaintiff" or "Wilson") applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1601 *et seq.*, alleging that she is unable to work because of a disability. Tr. 18. After her application was denied, Wilson filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on June 22, 2009. Tr. 28. Wilson subsequently petitioned for review to the Appeals Council who rejected review of Wilson's case on March 30, 2011. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case now before the court proceeds pursuant to 42 U.S.C. § 1383(c), and Section 1631(c)(3) of the Social Security Act. After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as

unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] See 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

>(1) Is the person presently unemployed?
>
>(2) Is the person's impairment(s) severe?
>
>>Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1[3]
>
>(3) Is the person unable to perform his or her former occupation?
>
>(4) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11thCir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and non-exertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical [3] This

subpart is also referred to as "the Listing of Impairments" or "the Listings."

Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Wilson, age 18 at the time of the hearing, completed the tenth grade of high-school. Tr. 26. Wilson has past relevant work as a cashier (unskilled, light), Tr. 49, and Wilson has not engaged in substantial gainful work activity since her alleged disability onset date of January 3, 2007. Tr. 20. Wilson claims she is unable to work because of several impairments including, obesity, pain in her lower back, abdomen, knee, and headaches. Tr. 20. Most of Wilson's alleged disabilities stem from two car accidents occurring on September 8, 2005 & April 4, 2006, respectively. Tr. 112. Wilson rates her average daily pain as a level six to seven on a ten point scale with ten being the highest level of pain. Tr. 24.

Medical records show that Wilson received treatment from a variety of medical practitioners. Tr. 21-26. On April 4, 2006, the records show that Wilson suffered from a contusion on her right leg and right knee after being hit by a car, and received treatment at

Baptist Medical Center South. Tr. 21. On May 7, 2007, Wilson underwent a consultative

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

examination by Dr. James O. Colley, a family practitioner, which revealed lower thoracic spine pain, tension headaches, asthma, and obesity. *Id.* The exam resulted in finding that Wilson was obese but comfortable with no acute distress. *Id.*

On May 11, 2007, Dr. Warren G. Brantley, psychologist, performed a mental examination of Wilson. *Id.* Dr. Brantley concluded that Wilsons's mental age was that of a 13 or 14 year old, while her mood was stable and she showed no evidence of anxiety or depression. Tr. 22. Wilson missed all of the questions for concentration and attention, except for correctly answering the year she was born. *Id.* Wilson could not properly name the President, Governor, or Mayor. *Id.* Dr. Brantley stated that Wilson did not need any extra assistance that a normal 18 year old would. *Id.* The psychologist noted Wilson was lying and not a credible historian in regard to any of her responses. *Id.* Dr. Bentley stated Wilson was "malingering; rule out borderline intellect; and rule out mild mental retardation". *Id.* On May 22, 2007, Dr. Robert Estock, a State agency reviewing physician, stated that Wilson had no "medically determinable impairment". Tr. 22-23.

Wilson was treated at Montgomery Primary Health Care for the period of July 18, 2006 to May 8, 2008. Tr. 23. During that time Wilson was prescribed birth control pills and treated for asthma. *Id.* Wilson was treated at Baptist Medical Center South from December 5, 2007 to September 6, 2008. *Id.* On March 1, 2008, Wilson underwent laproscopic

7

cholecystectomy and was diagnosed as suffering from gallbladder, chronic cholecystities; cholelithiasis; an abscess on her left thigh; and obesity. *Id.* She was released that same day. *Id.*

Wilson claims to have been hit by a car in either 2005 or 2006. Tr. 24. Wilson states that as a result of the incident, she has knee problems that prevent her from standing or sitting for more than 45 minutes at a time without lower back or knee pain. *Id.* Wilson also claims that on a normal day her "back pain is a 6 or 7" on a ten point scale. *Id.*

Dr. James N. Anderson, a licensed general surgeon, testified at the administrative hearing that Wilson had "impairments of chronic abdominal pain due to gallstone-removal, gynecological problems, obesity, history of hypothyroidism-treated, and malingering." *Id.* Dr. Anderson said that Wilson's main problems were abdominal pain and obesity, but that she "would not meet or equal any listing." Dr. Anderson concluded that Wilson was limited to a full range of light work. *Id.*

The ALJ found that even though Wilson's symptoms could reasonably cause her ailments, she was inconsistent in her statements about the intensity, persistence, and limiting effects of her symptoms, and was not credible with the residual functional capacity assessment. Tr. 25. The ALJ noted that Wilson's score of 46.6 body mass index represents extreme obesity. *Id.* The ALJ further notes that under Social Security Ruling 02-01p, obesity is "no longer a medi[c]al listing", but is still used to assess the limitations of functions. *Id.* The ALJ found that the Wilson's lack of treatment records for her alleged back

pain severely undermine her testimony. *Id.* Citing 20 CFR 416.929, the ALJ found that "the medical signs and laboratory findings do not establish a medically determinable impairment present that would give rise to pain at such an intensity or persistence consistent with [Wilson's] testimony." *Id.* The ALJ also found that "the intensity, persistence, and functionally limiting effects of [Wilson's] pain do not preclude the performance of work activity." *Id.*

## IV. Issues

Wilson raises two issues for judicial review:

(1) Whether substantial evidence supports the ALJ's assessment of Plaintiff's residual functioning capacity; and

(2) Whether the ALJ erred in failing to adequately address mental work related functioning.

*See* Doc. 12 at 1.

## V. Discussion

**(1) The RFC determination by the ALJ rests upon substantial evidence.**

Wilson argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence. *See* Doc. 12 at 5.  The ALJ must present a hypothetical to the vocational expert (VE) that includes all of a Plaintiff's conditions and limitations. *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985)(The case was reversed due to the misuse of expert witness, but the court held that a hypothetical question that includes education, work skills, experience, and physical limitations, is supported by substantial

evidence). Wilson alleges that the ALJ did not present the VE with a comprehensive hypothetical, and instead "gap filled" in anticipation of the outcome. *See* Doc 12 at 5. For the testimony of a VE to "constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d 1219 (11th Cir. 2002)(citing *Jones v. Apfel,* 190 F.3d 1224 (11th Cir. 1999)). The Court finds that in assessing the Plaintiff's impairments, the ALJ properly considered the required factors of the RFC to perform less than a full range of light work, including weight lifting restrictions, arm and leg movements, and the ability to stand or sit for prolonged periods of time. *See* C.F.R. § 416.967(b).

> The medical records demonstrate that Wilson has been diagnosed as suffering

from: "chronic abdominal pain status post laproscopic cholecystectomy, obesity, back

pain of uncertain etiology, headache disorder, and knee pain of unknown etiology." Tr.

20. Wilson also has been treated for asthma. Tr. 21. The ALJ posed this hypothetical

question to the VE:

> I ask you to assume a person of the same age, education, and work history as the claimant, and further assume that the, that they have the following Residual Functional Capacity.
> Lift and carry no more than twenty pounds occasionally; ten pounds frequently; sit six hours; stand, walk six hours; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ramps and stairs, no climbing of ladders ropes, scaffolds; and avoid concentrated exposure to extreme heat and cold; avoid concentrated exposure to unprotected heights.
> Would such a person be able to perform the – I'm sorry. Are there jobs that exist in significant numbers in the national or regional economy that this

hypothetical person could perform? Tr. 55-56.

A hypothetical question only needs to include the impairments of the claimant and does not need to list out each and every symptom. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007). The Court finds that the hypothetical question posited by the ALJ to the VE meets this requirement.

It is the duty of the ALJ to develop a full and fair record.[5] Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a)). The burden of proving disability still rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows the ALJ and the Commissioner to reach the proper conclusion. *Id*. The record includes extensive treatment records from 2006 through 2009. Tr. 23-25. The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Forrester v. Comm'r of Soc. Sec.,* 2012 WL 45446 (C.A. 11 (Fla.)). The ALJ addresses each of the medical opinions that are given, and furthermore, addresses the severity of the weight given to each. Tr. 21-26. The Court concludes that the ALJ's residual functioning capacity assessment that Wilson is able to perform light work, is supported by substantial evidence.

**B.  The ALJ properly assessed Wilson's mental limitations upon her ability to work.**

Wilson argues that the ALJ did not properly assess any mental work related restrictions. *See* Doc. 12 at 9. To properly assess mental ability, an ALJ must first assess the nature and extent of the mental limitations and restrictions, and then determine the residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(c). The ALJ gave substantial weight to the opinion of a consultative psychologist, Warren G. Brantley. Tr. 23. Dr. Brantley found that Wilson is a blatant malingerer. Tr. 180. Due to the malingering, Dr. Brantley could neither confirm nor rule

---

[5]The ALJ will develop a claimant's complete medical history for at least the 12 months preceding the month in which the claimant's application is filed. *See* 20 C.F.R. § 416.912(d).

out Mild Mental Retardation or Borderline Intellectual Functioning.  *Id.*  Dr. Brantley examined Wilson's mood, sensorium, cognition, concentration, attention, memory, fund of information, and abstractions.  Tr. 180-181.

Dr. Brantley concluded that Wilson has a mental age of "probably a 13 or 14 year old", but that her mood was stable and her senses were unimpaired.  Tr. 181.  During an examination on May 11, 2007, Wilson incorrectly "gave the year as 2000, month as January, day of the week as the 3rd.  *Id.*  Wilson missed all questions relating to concentration and attention.  *Id.*  When given memory questions, Wilson missed all items except the year she was born.  *Id.*  When asked, Wilson said that "Alicia Keyes was the President, Michael Jackson was the governor, and she did not know the mayor."  *Id.*  Based on these findings, Dr. Brantley stated "I do not see any convincing evidence of impairment of understanding, memory, or concentration", and concluded that these answers indicated "blatant malingering."  *Id.*  Dr. Brantley found that Wilson communicated well and was easily understood, while her thought process was "normal though slightly simple."  Tr. 182.  Based on Dr. Brantley's assessment, the ALJ found that Wilson is not generally credible due to inconsistent statements and blatant malingering.  Tr. 26.  The Court agrees with the ALJ's assessment of Wilson's lack of credibility.

The ALJ's finding is further supported by the opinion of Dr. Robert Estock, a State agency reviewing physician who administered a psychiatric review.  Tr. 183.  *See* 20 C.F.R. § 404.1527(d)(5) (we generally give more weight to the opinion of a specialist about medical issues related to his or her specialty); SSR 96-6p (findings of fact by State

agency medical and psychological consultants, other program physicians, and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources). Dr. Estock concluded that Wilson had no medically determinable impairment. *Id.* The ALJ noted that because this was opinion was from a psychiatric specialist, it merited significant weight. Tr. 23.

Wilson alleges that the ALJ failed to fully develop the record by failing to obtain

an additional IQ test or school records. *See* Doc. 12 at 10, 11. Specifically, Wilson argues that because she was unrepresented at her administrative hearing, the ALJ had a heightened duty to develop the record. *See* Doc. 12 at 10. (citing *Cowart v. Schweiker,* 662 F.2d 731, 734-35 (11th Cir. 1985)). However, this heightened duty arises only when the claimant has not waived her right to representation. *Cowart,* 662 F.2d at 734. Wilson repeatedly refused to attain counsel during the hearing, despite repeated warnings from the ALJ. Tr. 35-37. The ALJ explicitly informed Wilson of her right to attain counsel during the hearing and the following exchange occurred:

> ALJ: Miss Wilson, you're free to, you're free to proceed without a representative, but a representative could help you organize your testimony and make sure that all the points you want to get out in terms of your testimony, come out and then if there are other – and make other potentially important requests in this case as far as record development and potentially track down other medical evidence in this case, if it's out there.
> I would suggest that you obtain a – and also make legal arguments regarding listings and vocational, medical-vocational rules that might be applicable in this proceeding.

> So it's my recommendation that you consider obtaining a representative, but you're free to proceed. If you, if you want to proceed without a rep that's fine too. I mean that is your right, I'm not going to hold it against you.
>
> Wilson: No.
>
> ALJ: I beg your pardon?
>
> Wilson: No.
>
> ALJ: Would you like to proceed without – you, you want to proceed without a representative?
>
> Wilson: Yes.

Tr. 35-36.

When a claimant waives the right to counsel and is unrepresented at a hearing, the ALJ does not have a special duty to develop the record. *Brown v. Shalala*, 33 F.3d 931, 934 (11th Cir. 1995). Indeed, Wilson also knowingly waived her right to representation, by signing and filing an Advice/Waiver of Right to Representation form, prior to her hearing. Tr. 78.

The claimant bears the burden of proving that [they] are disabled, and consequently, [they] are responsible for producing evidence in support of the claim. *Ellison v. Burnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (per curium). Wilson argues that the ALJ erred by failing to order the school reports as recommended by the consultative psychologist. Tr. 180. However, a consultative examination is required only when "[y]our medical sources cannot or will not give sufficient medical evidence about

the impairment…". *See* 20 C.F.R. § 404.1517.  The ALJ found that the concurring reports by Dr. Brantley and Dr. Estock met the sufficient medical evidence requirements. Tr. 23.  Accordingly, the Court finds that the ALJ did not fail to fully develop the record, and that the ALJ's assessment concerning Wilson's mental work related functions is supported by substantial evidence.

## VI.  CONCLUSION

Pursuant to the findings and conclusions detailed in the Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper assessment of mental work related functions.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 5th day of March, 2012.

>    /s/ Terry F. Moorer
>    TERRY F.
>    MOORER
>    UNITED STATES MAGISTRATE JUDGE